50  417
49e 489

CORNELIUS J. CRONAN, PLAINTIFF IN ERROR, v. MOSES FOX, DEFENDANT IN ERROR.

1. The liability of personal property to be seized and sold under process issued from the courts of the state where the property is, must be determined by the laws of that state, notwithstanding the domicile of all the claimants be in another state.

2. B., being indebted to F., sold him a lot of cattle. The sale being by way of security for the debt, was in effect a chattel mortgage. The sale was made at Baltimore, and the cattle were then at the depot at that place ready for shipment to New York city for sale. F. resided at Baltimore; B. resided at Philadelphia. B. shipped the cattle to New York, in his own name, without the knowledge of F. F., on finding out that the cattle had been shipped in B.'s name, followed to Philadelphia and got from B. an order for the delivery of the cattle to him. An agent of F. carried the order to Jersey City and obtained possession of the cattle when they reached Jersey City. Creditors of B. sued out of the Supreme Court of this state an attachment against him as a non-resident debtor. The defendant, as sheriff, seized the cattle under the writ of attachment, after the agent of F. had obtained the possession of them. By a statute of Maryland, a bill of sale or mortgage of personal property whereof the vendor or mortgagor remains in possession, is invalid as against creditors of or purchasers from the vendor or mortgagor, unless the bill of sale or mortgage be recorded. No bill of sale or chattel mortgage such as the statute contemplates was made, nor did F. obtain possession of the cattle while they were in Maryland. In an action by F. against the sheriff for taking the cattle—*Held*,

1. That the right of the sheriff to take the cattle and the title acquired by his levy are to be determined by the law of this state.

2. That the transaction between B. and F. in Philadelphia amounted to a contract of sale, and that such sale, having been followed by delivery and possession in conformity with the Chattel Mortgage act of this state, the title of F. thereunder was valid as against creditors of B.

On error to the Supreme Court.

One Blumenthal, being the owner of a lot of cattle, and being indebted to Moses Fox in the sum of $4000, to secure that indebtedness sold him the cattle. The cattle were at the time in the loading-pen at the depot in Baltimore, ready to

be loaded on the cars for shipment to New York city.    The
arrangement between the parties was that Blumenthal should
sell the cattle to Fox ; that Fox should allow the cattle to go
on to market and be sold ; that Fox should take the pro-
ceeds, and if more was realized than the amount of his debt,
the surplus should be paid to Blumenthal ; if less, then Blu-
menthal should pay the balance of the debt.    In pursuance
of this arrangement, Blumenthal gave Fox a receipt in these
words :

"Received, Balt., Aug. 7, 1882, of Moses Fox four thou-
sand dollars, in full, for 97 cattle.
    "($4000).                    JULIUS BLUMENTHAL."

The receipt was made and delivered at Baltimore, Mary-
land.    Fox resided at Baltimore and Blumenthal in Phila-
delphia.    Immediately after the receipt was given to Fox, he
sent Willair, his book-keeper, to the freight office to have the
cattle billed for shipment in his name.    When Willair reached
the freight office the cattle had already been billed in Blumen-
thal's name, consigned to one Westheimer, a commission
agent at Jersey City.    Blumenthal having gone to his home
at Philadelphia, the shipment in his name could not be re-
voked.

The receipt was delivered to Fox about two o'clock on
Monday, the 7th of August, and the cattle left Baltimore, on
the cars, about four o'clock the same day.    Fox and Willair
took the next train for Philadelphia, and about three o'clock
on Tuesday morning saw Blumenthal and obtained from him
the following order :

"PHILADELPHIA, Aug. 8th, '82.
"MR. W. CROW—Will you please turn the three car loads
over to A. J. Willair.
                    "JULIUS BLUMENTHAL."

Immediately after the order was signed, Willair took the

train for Jersey City and reached there on Tuesday, August 8th, about half-past six in the morning. He presented the order to Westheimer, the consignee, who said it was all right, and he would turn the cattle over to him. The cattle had not then arrived. They reached Jersey City about half-past ten that morning, and Willair then presented the order to Gratz, who had come on with the cattle in the place of Crow. Gratz recognized the order and gave up the cattle to Willair, who took charge of them and had them watered and fed.

On Tuesday, August 8th, Martin, Fuller & Co., creditors of Blumenthal, sued out of the Circuit Court of the county of Hudson a writ of attachment against him as a non-resident debtor. The writ was delivered to Cronan, the defendant, the sheriff of Hudson county, who executed it by seizing the cattle the same evening at the cattle-yard in Jersey City.

Fox sued Cronan in trespass for taking the property under the writ. The suit was tried before the court, without a jury, and resulted in a finding for the plaintiff.

The defendant took exceptions to the ruling of the trial judge and sued out a writ of error.

For the plaintiff in error, *William Brinkerhoff.*

*Contra, Flavel McGee.*

The opinion of the court was delivered by

DEPUE, J. The controversy is with respect to the title of personal property. The sale by Blumenthal to Fox, being by way of security for a debt, was treated by the trial judge as in the nature of a chattel mortgage. It was so regarded by this court when the case was here on a former occasion. *Fox* v. *Cronan,* 18 *Vroom* 493. The defendant justified under the writ of attachment, and placed his justification upon a statute of the State of Maryland. The case is now here on exceptions to the ruling of the trial judge as to the effect of that statute.

The Maryland statute invalidates a bill of sale or mortgage of personal property, whereof the vendor or mortgagor

remains in possession, as against creditors of or purchasers from the vendor or mortgagor, unless the bill of sale be acknowledged and recorded. The statute requires, as a prerequisite to the recording, an affidavit endorsed on the bill of sale or mortgage that the consideration expressed therein is true and *bona fide;* and as to creditors or purchasers, mortgages of personal property are valid and take effect from the time of recording. No bill of sale or chattel mortgage was made such as is contemplated by the statute, nor did Fox obtain possession of the cattle while they were in Maryland. But the same statute which invalidates such transfers of property in favor of creditors and purchasers, provides that nothing therein shall be construed to invalidate such transfer as between the parties.

By the Maryland law, the sale negotiated at Baltimore transferred the property in the cattle to Fox, subject to be defeated at the instance of Blumenthal's creditors by a seizure under process out of the Maryland courts while the property remained in Maryland and subject to the laws of that state.

The cattle were the property of Fox when they were shipped in Blumenthal's name. They were his property when they reached Jersey City, no creditor of Blumenthal having intervened.

The defendant acquired no title to the cattle until he seized them under the writ of attachment. The property was then in the state and subject to our laws. The rule that the title to movable property is to be judged of and determined by the *lex rei sitae* (which is not without exceptions), has prominent application and adoption where personal property is seized under process issued from the courts of the state where the property is. In such cases the liability of the property to be seized and sold under such a writ must be determined by the law of that state, notwithstanding the domicile of all the claimants be in another state. *Green* v. *Van Buskirk*, 5 *Wall.* 307; *S. C.*, 7 *Id.* 139; *Hovey* v. *R. I. Locomotive Works*, 93 *U. S.* 664; *Guillauder* v. *Howell*, 35 *N. Y.* 657; *Warner* v. *Jaffrey*, 96 *Id.* 248, 257; *Keller* v. *Paine*, 107 *Id.*

83, 90; *Marvin Safe Co.* v. *Norton,* 18 *Vroom* 410; *Whart. Con. of Laws,* §§ 340–349. Independent of the sale in Maryland, the transactions between Blumenthal and Fox in Philadelphia, and the order to deliver the cattle to Fox were in themselves a contract of sale, and the sale was followed by an immediate delivery and actual change of possession in conformity with the Chattel Mortgage act of this state. *Rev., p.* 709, § 39; *Rev. Sup., p.* 491, § 11. These things all occurred before the defendant made his levy under the writ of attachment, and by the law of this state gave Fox title to the cattle superior to that of the attaching creditors.

The decision of the trial judge in favor of the plaintiff on this subject was correct, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, WHITAKER. 13.

*For reversal*—None.